ROY D. KEEHN, AS RECEIVER OF THE CENTRAL MUTUAL INSURANCE COMPANY OF CHICAGO, PLAINTIFF-APPELLANT, v. HI-GRADE COAL AND FUEL COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued October 1, 1946—Decided December 23, 1946.

Before CASE, CHIEF JUSTICE, and Justices HEHER and COLIE.

For the plaintiff-appellant, *Samuel M. Hollander* and *Seymour Bodner.*

For the defendant-respondent, *Kristeller & Zucker* (*Saul J. Zucker*).

The opinion of the court was delivered by

CASE, CHIEF JUSTICE. The appeal is from a judgment for the defendant following a trial before the Essex County Court of Common Pleas, the judge sitting without a jury. Central Mutual Insurance Company of Chicago was organized as a mutual insurance corporation under the laws of the State of Illinois. It was never licensed to do business in this state. On November 18th, 1935, effective as of November 7th, 1935, it issued one of its policies to Hi-Grade Coal and Fuel Company, a New Jersey corporation, insuring that company against liability for bodily and property damage with respect to its automobile trucks. The term of the policy was one year. The amount named therein as the premium for the year was $704.76. On December 10th, 1935, the policy was canceled. The earned premium for the period from November 7th, 1935, to the date of the cancellation amounted to $162.09, and it was paid and accepted. On or about January 8th, 1937, the insurance company was decreed by the courts of Illinois to be insolvent and a receiver was appointed to administer its affairs. On March 19th, 1940, levy was made by the receiver, later confirmed by an Illinois court, on all indi-

viduals and corporations who at any time from January 31st, 1935, to January 11th, 1937, were holders of a policy or policies issued by the company in the amount of 100 per centum of the cash premiums expressed in the respective policies. The assessment against the Hi-Grade Coal and Fuel Company was $704.76. The present suit was instituted by the receiver of the insurance company to collect that sum with interest.

The trial court held as a finding of fact that the insurance company had solicited from the defendant the policy of insurance sued upon and that it had transacted insurance business within the State of New Jersey contrary to and in violation of *R. S.* 17:17–10; and the court further determined, in point of law, that the solicitation of the insurance policy and the performance of the obligations mentioned in the policy of insurance constituted the transaction of insurance business within the state contrary to and in violation of *R. S.* 17:17–10 and 17:32–1, and that the plaintiff was thereby precluded from maintaining the action against the defendant. Upon those findings the court awarded the judgment under appeal.

The rule is that where a cause is tried by the court, without a jury, all that can be reviewed, on questions of fact, is the sufficiency of the facts found to support the judgment. *City of Elizabeth* v. *Hill,* 39 *N. J. L.* 555; *Monahan* v. *Seaboard Surety Co.,* 126 *Id.* 148. The only strict finding of fact made by the court was that the insurance company had solicited the policy of insurance; and that is really a conclusion drawn from factual incidents which the court did not settle. Taking it, however, as an adequate finding, it is not of itself such a finding as will support the judgment, inasmuch as our courts have repeatedly said that a single act by a corporation within the line of its business does not constitute the transaction of business within the meaning of the corporation statute prohibiting the transacting of business here by a foreign corporation which has not first obtained authority therefor. *D & H Canal Co.* v. *Mahlenbrock,* 63 *Id.* 281; *Wood & Selick, Inc.,* v. *American Grocery Co.,* 96 *Id.* 218; *Tennessee Products Co.* v. *Raritan Coal, &c., Co.,* 120 *Id.* 138. Whether a corporation has transacted business within the state contrary

to the statute is a mixed question of law and fact. Therefore, inasmuch as the court's findings of fact are not in themselves sufficient to sustain the judgment, it becomes necessary for us to digest the proofs to ascertain whether, independently of the court's finding of fact, they support the court's finding of law and award of judgment.

The policy was negotiated by the Schechner Agency, insurance brokers of Newark, New Jersey, present at the trial in the person of Sheridan Schechner, a witness for the defendant. Mr. Schechner testified that his office had not issued the policy but had negotiated for its issuance; he identified the policy and the application made for the same on one of the insurance company's printed forms; he said that when the policy was canceled he returned the document to the insurer; he produced a ledger sheet showing the account which was carried in the name of Joseph Weisberger, treasurer of the insured company, and which included the policy item; he testified that he did not recall ever having negotiated another policy of the Central Mutual Insurance Company; he further testified that the defendant company and its principal officers had been clients of his office for some years past and in placing their business he put it in whatever companies he selected. The ledger sheet which contained the entry for the policy in question contained also numerous other entries. Most of the charges for policies, except where the cross item was a cancellation, showed payment by "check and oil bills." The earned premium on the canceled policy in question, $162.09, was marked as paid in that manner. We are unable to find in that evidence substantial proof that the Schechner Agency was acting as broker or agent for the insurance company rather than for the insured. One answer given by the witness is distinctly *contra* such an assumption. He was being questioned on the above mentioned ledger sheet, and he was asked "And those [viz., the entries thereon] are evidence of transactions you, as the broker or agent of the Hi-Grade, handled for them, is that correct?" The answer was "Yes." Schechner's testimony is devoid of incidents to carry the burden of proving that his office was the agent of the insurer either generally or in that particular instance.

The only other witness for the defendant was its secretary who testified that the insurance placed in plaintiff's company was solicited by Mr. Schechner and that the insured trucks were used in interstate service between New Jersey and the coal fields in Pennsylvania. It is clear, therefore, both by the terms of the policy which permitted operation within a 300 mile radius of Irvington and by the actual operation of the trucks that the purview of the contract went far outside of this state. It is, of course, entirely competent for an insurance broker to solicit a prospective client for the privilege of procuring insurance as the agent of the client.

In addition, defendant had the benefit of the answers made by the plaintiff to propounded interrogatories, whereby it appeared that the plaintiff's company had written three policies (including the policy in question) covering risks upon property located partly, but not exclusively, within the State of New Jersey, namely, to the Laubach Transportation Company, Phillipsburg, upon equipment to be operated between New Jersey and Ohio; to the Hi-Grade Coal and Fuel Company, Irvington (the policy in question), on equipment, the operation of which was confined to the territory within a 300 mile radius of the Town of Irvington; and Brockway Fast Motor Freight, Inc., Somerville, on equipment which was to be operated between Baltimore, Maryland, and Somerville, New Jersey; all of the policies having been issued at Raleigh, North Carolina. There is no proof that the Laubach and the Brockway policies were solicited by the insurance company either in or out of the State of New Jersey. The form of application used in applying for the defendant's policy contained in its printed provisions the word "agent" in such expressions as "this application shall not be binding on the agent's principal unless and until," &c. It does not appear whence or by whom the application form was obtained; and even if it had been in the Schechner office, the possession of a single application blank carries no presumption that the possessor is the agent of the person to whom the application is addressed.

The "scintilla" rule does not apply in this jurisdiction. *Pellington* v. *Erie Railroad Co.*, 115 *N. J. L.* 589; *Habedank*

v. *Atlantic Casualty Insurance Co.*, 128 *Id.* 338. A scintilla of evidence will not support a verdict. *Soriano* v. *Greenfield*, 131 *Id.* 401. The proofs do not sustain a finding that the Schechner office procured the policy as the agent of the insurer or that the contract was made in this jurisdiction. The application procured from defendant by Schechner laid no obligation upon the insurer even as a temporary binder and was not approved or accepted in the State of New Jersey. There is no suggestion that Schechner had the insurer's blank policies of insurance or had the slightest authority to issue the insurer's policies or to obligate the insurer in any degree. *Smith & Wallace Co.* v. *Prussian Insurance Co.*, 68 *Id.* 674; *Higgins* v. *Fidelity-Phoenix Fire, &c., Co.*, 107 *Id.* 175, and *Cheshansky* v. *Merchants Fire Insurance Co.*, 102 *Id.* 414, are on quite distinguishable factual situations.

But if that were determined otherwise, the proofs would not sustain the broader finding that the company was transacting business in this state. A single, isolated policy of insurance procured under the circumstances of the case would not constitute the transacting of insurance business in violation of *R. S.* 17:17–10 ("* * * No company shall transact the business for which it is incorporated until it has received the certificate from the Commissioner * * *") or *R. S.* 17:32–1, *et seq.* (transaction of business by foreign companies). (See cases cited *supra*.)

The suit is predicated upon the judgment of assessment, following the insolvency of the company, levied and entered by the Circuit Court of Cook County, Illinois. The policy was a mutual insurance contract, and every insured under such a policy is, to a certain extent, an insurer. *Cf. People, ex rel. Palmer* v. *Central Mutual Insurance Company of Chicago*, 313 *Ill. App.* 84; 39 *N. E. Rep.* (2d) 400; *Mygatt* v. *New York Protection Insurance Co.*, 21 *N. Y.* 52, 63. The obligation of the defendant is analogous to that of a stockholder, whose subscription has not been fully paid, in an insolvent corporation. The defendant, in becoming a policyholder in and a member of the Illinois corporation, submitted itself to the jurisdiction and laws of that state, and in

some respects is bound by the terms of the insolvency judgment. *Broderick* v. *Rosner,* 294 *U. S.* 629; 79 *L. Ed.* 1100.

But it is argued by the respondent that the limit of the assessment, if an assessment is to be allowed, should be $162.09 since that was the actual premium charged and paid for the period between the date and the cancellation of the policy. The policy provision is that "the contingent liability of the assured hereunder is limited to one time the premium named herein and no more." The face of the policy contains a schedule of hazards against which the insurance runs and in apposition thereto a table of charges concluding with this summation "Premium $704.76." The policy goes further, however, and provides that it may be canceled at any time by either the company or the insured and fixes the methods by which the premium shall be computed for the period of coverage. The proofs show that the policy was canceled December 10th, 1935, three weeks after issue and before the annual premium had been paid and, as we have already said, that the premium actually demanded and paid was $162.09. We are of the opinion that the last named amount may properly be said to have been named in the policy in that it was fixed in strict accordance with the policy provision upon a basic annual rate of $704.76.

The original receiver of the insolvent insurance company was Henry G. Miller, the predecessor of the present receiver, Roy D. Keehn. The judgment in the Circuit Court of Cook County, Illinois, in which this action grounds, took the form of a confirmation of the assessment roll compiled and filed by Mr. Miller as receiver and certifies that the receiver had levied on all pertinent policyholders an assessment of one time the cash premium expressed in the respective policies and that the assessment against Hi-Grade Coal and Fuel Company was $704.76. The judgment was a judicial determination relative to the corporate affairs in which that insured was represented by the corporation. It was not a personal judgment against the insured who had not been brought in as a party and was bound only in that he was privy to the proceedings touching the body of which he was a member. He was bound as to the propriety and the rate and, if correctly

calculated, the amount of the assessment, matters which concerned the entire body of insureds as a class; but he was left free to interpose all defenses personal to himself in a later action to enforce the assessment. *Merola* v. *Fair Lawn Newspaper Printing Corp.*, 135 *N. J. Eq.* 152. It is superficially said that $704.76 was the amount of the assessment and, therefore, is now beyond question. That argument would hold if the assessment were calculated on the proper policy premium, but an error by the receiver in applying the common rate of assessment to a mistaken policy premium creates a defense personal to the individual member affected thereby if he was not a party to the assessment proceedings and had no personal notice thereof.

There was such an error in listing the premium as $704.76. The premium of $162.09, calculated by the company in accordance with the figures and provisions on the face of the policy, was the amount on which the "one time" multiplication should have been based—an assessment of $162.09. That method of calculation as to a canceled policy was conceded by the receiver to be correct in another such proceeding, namely, *Miller, Receiver of Central Mutual Insurance Company of Chicago* v. *Barnwell Brothers, Inc.*, 137 *Fed. Rep.* (2*d*) 257. The policy there sued upon appears to have been identical in form with the policy in our own case, and the action was grounded in the same judgment of Cook County Circuit Court.

We conclude that the judgment below should be reversed and that a judgment for $162.09 with interest and costs in favor of the plaintiff and against the defendant should be entered in the Essex County Court of Common Pleas. That will be the order.

As to respondent's motion to dismiss the appeal for appellant's failure to print the conclusions of the court below:— We consider that the appellant should have done the printing. The application will be denied, however, upon terms that the appellant pay the respondent's expense in having the conclusions printed as an *addendum* to its brief. The alternative, which we do not anticipate will happen, is that the appeal will be dismissed.